CHINN *v.* COUSINS.

(In Banc.  Nov. 25, 1946.)

[27 So. (2d) 882.  No. 36385.]

**U. B. Parker,** of Wiggins, for appellant.

**White & Morse,** of Gulfport, and **Rushing & Guice,** of Biloxi, for appellee.

**Alexander, J.,** delivered the opinion of the Court.

The parties hereto were candidates in the Democratic municipal primary election on July 16, 1946, for the office of Mayor of the City of Biloxi. The original count showed the nomination of Cousins by a majority of one hundred and seventy-five votes. At the general election on August 12th, he was declared elected. Upon contest duly made by appellant, certain irregular and illegal votes were thrown out, resulting as follows: Cousins one thousand nine hundred and seventy votes, Chinn one thousand eight hundred and fourteen votes, or a majority of one hundred and fifty-six in Cousins' favor.

There was a judicial review under the Corrupt Practices Act, Secs. 3158–3195, Code 1942, by a special tribunal which found under the existing facts that precedent conditions to the jurisdiction had been met. This tribunal found that the contestee, Cousins, was legally nominated at the primary held on July 16th, but in their findings of fact conceded that ''there were some irregularities in the holding of said election which the Presiding Judge and the Commission do not think affected the result of the election or which are necessary to set out in the statement of facts.''

Among such deviations from the prescribed requisites were a failure to designate a distributor of ballots and ballot boxes; to take proper receipts therefor; to inclose duplicates thereof with the counted votes in the ballot boxes, all of which is required by Section 3159. The qualifications of one of the commissioners designated to hear

the contest were questioned upon the ground that he had placed wagers upon the outcome of the election. Motion to recuse the commissioner was overruled upon the ground that the wagers had theretofore been paid, and there remained in the commissioner no further interest in the subsequent proceedings. In view of the fact that the findings of the special tribunal were unanimous, we need not here elaborate the suggestion that the ultimate outcome of the election remained the issue whose solution this commissioner was called in to determine.

Other such irregularities included a failure to furnish cards of instruction, Sec. 3254; to account for all ballots distributed, Secs. 3159, 3258; to seal the boxes; and the qualifications of the municipal Democratic Executive Committee.

We have listed these lapses from statutory duty, not because they constitute the basis of our decision, but in order to guarantee against repetition in the election which we are compelled to order. Whether taken singly or in their entirety they would rise above mere irregularities we need not here decide, but we will discuss only the failure of an initialing manager at the West Biloxi box to initial the ballots, as required by Code 1942, Section 3164.

The West Biloxi box is one of the largest in the city. At this box there were counted six hundred and sixty-three votes for Cousins and three hundred and fifteen for Chinn. None of these were initialed by the manager. Section 3164 requires: "When any person entitled to vote shall appear to vote, he shall first sign his name in a receipt book or booklet provided for that purpose and to be used at that election only and which receipt book or booklet shall be used in lieu of the list of voters who have voted formerly made by the managers or clerks; whereupon and not before, the initialing manager shall indorse his initials on the back of an official blank ballot, prepared in accordance with law, and at such place on the back of the ballot that the initials may be seen after the ballot has been marked and folded, and when so indorsed he

shall deliver it to the voter, which ballot the voter shall
mark in the manner provided by law, which when done
the voter shall deliver the same to the initialing manager
in the presence of the others, and the manager shall see
that the ballot so delivered bears on the back thereof the
genuine initials of the initialing manager, and if so, but
not otherwise, the ballot shall be put into the ballot box;
and when so done one of the managers or a duly appointed
clerk shall make the proper entry on the poll book.''

That portion of the section requiring the voters to sign
his name in a receipt book was held mandatory in Hayes
v. Abney, 186 Miss. 208, 188 So. 533, 537. This case dis-
cusses the abuses which such provision was designed to
frustrate, and dispels any notion that it was a mere orna-
mental gadget placed upon the machinery of election from
mere caprice. Its designation there as ''the keystone of
the arch'' in the structure of popular government sug-
gests the propriety of retaining such figure to make ap-
propriate the description of the companion provision as
its cornerstone.

The reasoning of the special tribunal that since the
voters at the West Biloxi box had signed the register and
were thus identified as qualified electors, no omission of
a third party ought to thwart their will, is more accepta-
ble as logic than as law. It stands upon the assumption
that they have cast a legal ballot. Be it an act of negli-
gence, inadvertence or design, its cause is less important
than its result. A penciled ballot or one marked with an
improper device quite accurately discloses the will of the
voter, even though it defies the will of the statute.

The voter must express his will through a legal ballot.
A ballot not initialed by a manager may not be deposited
in the box, for ''the manager shall see that the ballot so
delivered bears on the back thereof the genuine initials of
the initialing manager, and if so, but not otherwise, the
ballot shall be put into the ballot box.'' Obvious justifi-
cation for such requirement need not be summoned to
fortify the force of its plain language.

We have had frequent occasion to appraise the effect of non-conformity with this statute. We have been alert to the danger of rendering inefficient the machinery of nomination by a blind insistence upon absolute and ritualistic conformity with minute detail. A sane and practical relaxation indulged under circumstances where, despite trivial lapses, the voters have expressed their will by lawful ballot is not inconsistent with a rigid requirement that such ballot be lawful. Indeed, in Shaw v. Burnham, 186 Miss. 647, 191 So. 484, an endorsement upon the face of the ballot was held valid though the statute provided it be made upon its back. The endorsement was the substance, its position was the form.

We conclude therefore that none of the ballots cast at the West Biloxi box are legal. A few ballots cast at the three other precincts were likewise defective. Of the latter, fifteen were cast for Chinn and eleven for Cousins. We must and do order a new election at the West Biloxi box on Saturday, November 30, 1946, against the results of which election Chinn is to be charged with four votes, representing the excess in Cousins' favor of the uninitialed votes cast at the other precincts. In other words, the votes cast in the new election are to be combined with the votes heretofore cast in the primary in the other three boxes from which latter are to be deducted the following votes, for Chinn fifteen, for Cousins eleven. The successful candidate so found to be nominated shall be certified as nominee at a special election to be called by the Governor, pursuant to Code 1942, Section 3187. In the judgment to be entered in conformity herewith, new managers, to be agreed upon by the parties or otherwise selected by this Court, will be appointed. Briggs v. Gautier, 195 Miss. 472, 15 So. 2d 209.

So ordered.